## COMMONWEALTH *vs.* MICHELE FRAZIER
## (and three companion cases[1]).

Middlesex. February 7, 1991. - May 22, 1991.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Standing to object, Probable cause, Exigent circumstances. *Probable Cause. Arrest. Controlled Substances. Conspiracy.*

A named woman's conduct on the day of her arrest for trafficking in cocaine, combined with information supplied by a reliable informant, amounting to no more than mere suspicion and association with another individual, even if there was probable cause to believe that the latter committed a crime, did not give police officers probable cause to believe that the woman was committing a crime, and consequently, her arrest by police and a search of her handbag incident to that arrest were unlawful and suppression of cocaine found during the search of the woman's handbag was proper as to her. [239-241]

A defendant charged with trafficking in cocaine in violation of G. L. c. 94C, § 32E (*b*), was deemed to have "automatic standing" to contest the legality of the search of a codefendant's handbag and the seizure of cocaine from the handbag, although he neither had actual possession of the seized item at the time of the search nor was present at the place of the search, where possession of the seized cocaine at the time of the contested search was an essential element of the trafficking charge against the defendant; in addition, where the search of the handbag was unlawful as to the codefendant for lack of probable cause, it was also unlawful as to the defendant and, therefore, the defendant's motion to suppress as it related to the trafficking charge was improperly denied. [241-245, 246] NOLAN, J., with whom LYNCH, J., joined, dissenting.

A defendant charged with conspiracy to traffic in cocaine in violation of G. L. c. 94C, § 40, was deemed not to have "automatic standing" to contest the legality of a search of a codefendant's handbag and the seizure of cocaine from the handbag, where possession of the cocaine was not an essential element of the conspiracy charge. [245-246]

[1]Two against Donald R. Johnson and one against Michele Frazier.

INDICTMENTS found and returned in the Superior Court Department on March 10, 1988.

Pretrial motions to suppress evidence were heard by *Guy Volterra*, J.

Applications for interlocutory appeal were allowed by *Wilkins*, J., and *Lynch*, J., in the Supreme Judicial Court for the county of Suffolk and the appeals were reported by them to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matters from the Appeals Court.

*Henry D. Katz* for Donald R. Johnson.

*Martha Coakley*, Assistant District Attorney, for the Commonwealth.

*Alan Chapman*, for Michele Frazier, submitted a brief.

LIACOS, C.J. Defendants Michele Frazier and Donald R. Johnson were indicted for trafficking in cocaine in excess of 200 grams, pursuant to G. L. c. 94C, § 32E (*b*) (3) (1986 ed.),[2] and for conspiracy to traffic in cocaine, pursuant to G. L. c. 94C, § 40 (1988 ed.). Both Frazier and Johnson filed motions to suppress. A judge of the Superior Court allowed both motions, but, after the Commonwealth filed a motion for reconsideration, the judge amended his original suppression order by denying the motion to suppress as to Johnson. The Commonwealth and Johnson each filed an application for an interlocutory appeal. Each application was allowed by a single justice of this court, and the appeals were entered in the Appeals Court. The Appeals Court consolidated the cases, and we transferred them to this court on our own motion.

The Commonwealth argues that the judge erred in finding that there was no probable cause to search Frazier's handbag. Johnson argues that the judge erred in ruling that he did not have automatic standing under *Commonwealth* v. *Amendola*, 406 Mass. 592 (1990), to challenge the search of Frazier's handbag.

The judge made the following findings. In October, 1987, State Trooper John F. McCabe received information from a

---

[2]See note 4, *infra.*

confidential informant, who had provided reliable informa-
tion in the past, that one Richard Bangs was "dealing in"
cocaine and was being supplied by a person named "Don"
from Revere. Trooper McCabe verified the information as to
Bangs. Bangs's residence was put under police surveillance.
On one occasion, the police observed a black Lincoln auto-
mobile parked in front of Bangs's house. After further inves-
tigation, the police learned that the automobile was regis-
tered to Maryann Johnson of East Boston, Johnson's former
wife. Johnson once had been arrested in this vehicle; a subse-
quent search of his house resulted in the seizure of cocaine.
The police observed Johnson leaving Bangs's residence with
Frazier in the Lincoln automobile. Several days later, the
two were again seen approaching Bangs's residence. On the
latter occasion, the two were in a white Mercury Cougar au-
tomobile which was registered in Frazier's name. The police
also observed a meeting between Johnson and the confiden-
tial informant in November, 1987.

At 10 A.M. on November 10, 1987, the informant tele-
phoned Trooper McCabe. The informant stated that he had
just spoken with Johnson, who said he was going to court
that day and might be incarcerated. Johnson told the inform-
ant that, if he wanted to purchase cocaine in the future, he
should deal with Johnson's girl friend, and he gave the in-
formant a telephone number. Trooper McCabe verified that
the number was listed in Frazier's name. Later that morning,
the informant again telephoned Trooper McCabe. He told
Trooper McCabe that he had just received a telephone call
from Johnson to the effect that he had not been incarcerated
and that he would continue to handle the cocaine business.
The informant told McCabe that Johnson had said he would
be making a cocaine transaction between 1 and 2 P.M. that
afternoon at a liquor store in Malden. Johnson also told the
informant he would be driving the white Mercury Cougar
automobile.

Trooper McCabe and other officers immediately set up a
surveillance point in the vicinity of the liquor store. Other
officers established a surveillance point at Frazier's residence

in Revere. These officers observed Johnson and Frazier leaving the apartment house and entering the white Cougar automobile. They observed Frazier carrying a white handbag with a small strap. One of the officers who was participating in the surveillance of Frazier's home recognized her from other drug surveillances.

The officers attempted to follow Johnson. However, Johnson operated the vehicle in a manner "which was designed to 'shake' surveillance." He succeeded in eluding the "tailing" officers. The officers who had been following Johnson then took up stationary positions in the vicinity of the liquor store. McCabe observed the white Cougar automobile pass his position on Route 16 in Malden, going in the direction of the liquor store. Trooper McCabe followed Johnson and Frazier into the parking lot of the liquor store. Johnson drove around the parking lot and then drove back out onto the main thoroughfare to a doughnut shop where Frazier alighted from the vehicle. Other officers were dispatched to the doughnut shop to take up surveillance of Frazier.

Trooper McCabe followed Johnson back to the liquor store. He observed Johnson driving around the parking lot. Johnson then stopped the automobile and made a telephone call. Johnson returned to his automobile and circled the parking lot slowly. He came in proximity to one of the surveillance automobiles. Trooper McCabe concluded that the surveillance had been discovered by Johnson. The trooper communicated this information to the other police officers.

McCabe observed Johnson driving back to the doughnut shop. Johnson stopped the automobile in front of the shop and signalled to Frazier to come out. Frazier shook her head to indicate that she would not come out of the shop. Johnson drove away. The police stopped him and placed him under arrest.

The troopers, who were inside the shop observing Frazier, also noticed that Johnson had stopped the automobile in front of the shop and signalled Frazier to come out. They also observed Frazier shaking her head. The troopers then walked over to Frazier, identified themselves as police of-

ficers, and asked, "[I]s that the guy you came with?" Frazier answered, "[N]o, that isn't." Frazier's handbag was on the counter. One of the troopers seized the pocketbook and said, "I can feel a hard object." The trooper unzipped the bag and discovered a large quantity of a hard white substance, later determined to be cocaine. Frazier was placed under arrest.

1. *Michele Frazier.* The search of Frazier's handbag was conducted without a warrant. A warrantless search is inherently suspect unless it falls within one of the exceptions to the warrant requirement. The Commonwealth argues that the search was valid as incident to the lawful arrest of Frazier. *Commonwealth* v. *Bowden*, 379 Mass. 472, 477 (1980). When law enforcement officials use an informant's tip as the basis for an arrest and search, art. 14 of the Massachusetts Declaration of Rights requires that the Commonwealth satisfy the two-pronged test set out in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). The Commonwealth "must demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the 'basis of knowledge' test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the 'veracity' test)." *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990). If the information provided by the informant fails to meet either or both of the *Aguilar-Spinelli* prongs, independent police corroboration can be used to compensate for the deficiency. *Id.* The judge in the case at bar found that the Commonwealth satisfied the "veracity" test because the confidential informant had provided information in the past which led to the arrest and conviction of a named individual. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975).

The judge found, however, that the Commonwealth failed to satisfy the "basis of knowledge" test. The judge's findings of fact will not be disturbed unless clearly erroneous. *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). While the judge's rulings of law, as they bear on constitutional issues, are open for reexamination by this court, they are entitled to substantial deference. *Id.*

At the time of the arrest, the police had the following information regarding Frazier. The police observed Frazier, and an automobile registered in her name, at the home of Richard Bangs. In addition, they knew that Johnson had told the informant that, if he was incarcerated, the informant should deal with Johnson's girl friend, and provided the informant with a telephone number. The information as to Frazier's automobile registration number and telephone number was corroborated by the police. However, these were merely innocent details to the extent they related to the registration of the vehicle and to Frazier's telephone number. See *Commonwealth* v. *Bottari, supra* at 784 (corroboration of innocent details less significant in establishing probable cause than corroboration of facts suggestive of criminal activity). There was no evidence that activity consistent with drug dealing was taking place at Bangs's residence where Frazier and her car were observed. There was no evidence prior to the day of arrest which would have established probable cause to arrest Frazier.

A person may not be arrested based on mere suspicion and association with another individual, even if there is probable cause to believe that the latter committed a crime. See *Commonwealth* v. *Dirring*, 354 Mass. 523, 531 (1968). Cf. *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666, 675-676 (1985). The only information that the police had as to Frazier's involvement in illegal activity was her association with Johnson. The fact that Johnson told the informant to deal with his girl friend should he be incarcerated does not implicate Frazier on the day of her arrest since Johnson was not incarcerated. The only reasonable inference as of the day of Frazier's arrest was that Johnson was able to conduct the business himself. As the motion judge pointed out, "the fair inference with regard to Johnson's statement to the informant was that Frazier was not presently involved with the dealing."

The Commonwealth argues that Frazier's conduct on the day of her arrest, combined with the information provided previously, established probable cause. We disagree. Frazier

was observed at a doughnut shop; the transaction was to have occurred at a liquor store. Frazier was not at the place where, according to the informant, the drug transaction was to occur. "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. . . . Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." (Citation omitted.). *Ybarra* v. *Illinois*, 444 U.S. 85, 91 (1979). Frazier's conduct at the doughnut shop consisted of the shaking of her head in apparent response to Johnson's gesture that she come out of the shop and lying to the police about having arrived at the shop with Johnson. We do not think that Frazier's conduct at the doughnut shop is sufficient to establish probable cause.

Since there was no probable cause to believe that Frazier was committing a crime, the arrest was unlawful. Since the arrest was unlawful, the search incident to that arrest was invalid. Thus, the judge's suppression of the cocaine found during the search of Frazier's handbag was proper as to Frazier.

2. *Donald Johnson.* Johnson argues that he has automatic standing under *Commonwealth* v. *Amendola, supra,* to challenge the search of Frazier's handbag. The Commonwealth contends that, since Johnson did not have possession of the items seized at the time of the search, nor was he present at the place where the search was conducted, he does not have automatic standing to challenge the search.

The automatic standing rule was enunciated by the Supreme Court in *Jones* v. *United States*, 362 U.S. 257 (1960). In *Jones*, the Court held that defendants charged with crimes of possession have standing to challenge the search. *Id.* at 263. To hold to the contrary, the Court concluded, would allow the government to convict a defendant because of his possession of the seized item, and at the same time to deny the defendant an opportunity to challenge the search on the ground that he did not have possession. *Id.* The Court reasoned that such a contradictory position by the prosecu-

tion left the defendant with the unfair dilemma of either in-
criminating himself by claiming possession of the contra-
band, or not claiming possession, and giving up the
opportunity to challenge the search. See *id.* at 261-262.

Twenty years later, in *United States* v. *Salvucci*, 448 U.S.
83 (1980), the Court abandoned the automatic standing rule.
The Court in *Salvucci* explained that the defendant's self-
incrimination dilemma, used in *Jones* to support the adoption
of the automatic standing rule, was eliminated by the Court's
holding in *Simmons* v. *United States*, 390 U.S. 377 (1968),
that testimony given by a defendant in support of a motion to
suppress cannot be admitted as evidence of guilt at trial.
*Salvucci, supra* at 89-90.

In *Commonwealth* v. *Amendola, supra*, we stated our view
that the concerns of the *Jones* Court remain valid today. In
*Amendola*, marihuana was found inside the trunk of an auto-
mobile which did not belong to the defendant. We stated that
"[t]he Commonwealth, in order to prove possession, aims to
show that the defendant was the driver of the [automobile]
and was in possession of the contraband. But in arguing
against standing, the Commonwealth claims that the defend-
ant had no connection with the [automobile] and was not in
possession of the contraband. The Commonwealth may not
have it both ways." *Commonwealth* v. *Amendola, supra* at
600. We pointed out ·in *Amendola* that the defendant's self-
incrimination dilemma was not eliminated by *Simmons,
supra*, since "[t]he use of the testimony for impeachment
purposes would subject a defendant to precisely the same di-
lemma, unless he was prepared to relinquish his constitu-
tional right to testify in his own defense, and would thereby
create a strong deterrent to asserting [claims under the
Fourth Amendment to the United States Constitution]." *Id.*,
quoting *United States* v. *Salvucci, supra* at 96 (Marshall, J.,
dissenting). We held, as matter of State constitutional law,
that, "[w]hen a defendant is charged with a crime in which
possession of the seized evidence at the time of the contested
search is an essential element of guilt, the defendant shall be
deemed to have standing to contest the legality of the search

and the seizure of that evidence." *Commonwealth* v. *Amendola, supra* at 601. We added in a footnote, however, that our adoption of the automatic standing rule was limited to searches of automobiles and houses. *Id.* at 601 n.4. We left "to a case by case analysis the question whether the rule should be extended to other circumstances where possession crimes are in issue." *Id.*

The dispositive issue in determining whether a defendant has automatic standing is whether "possession of the seized evidence at the time of the contested search is an essential element of guilt." *Amendola, supra* at 601. See *Jones* v. *United States, supra* at 263-264. "Possession implies 'control and power,' . . . exclusive or joint . . ., or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Pratt*, 407 Mass. 647, 651 (1990), quoting *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989). The fact that a defendant did not have actual possession of the seized item at the time of the search, or that he was not present at the place where the search was conducted, does not preclude in every instance the defendant from having standing to challenge the legality of the search. See *United States* v. *Anderson*, 552 F.2d 1296, 1298-1299 (8th Cir. 1977) (defendant not present during search but charged with possession of stolen merchandise has standing under *Jones* to challenge search of codefendant's home); *Glisson* v. *United States*, 406 F.2d 423, 427 (5th Cir. 1969) (defendant, who was in jail at time of search, has standing under *Jones* to challenge search where charged with possessory crime). If a defendant is charged with a crime in which possession is an essential element, the fact that the defendant did not have actual possession at the time of the search, or the fact that the defendant was not present when the search occurred, does not eliminate the problem of allowing the government to

benefit from contradictory positions, nor does it alleviate the defendant's self-incrimination dilemma.[3]

Johnson is charged with two crimes, trafficking in cocaine in violation of G. L. c. 94C, § 32E (*b*) (3) (1986 ed.), and conspiracy to traffic in cocaine in violation of G. L. c. 94C, § 40 (1988 ed.). General Laws c. 94C, § 32E (*b*), then provided:[4] "Any person who trafficks in cocaine . . . [1] by knowingly or intentionally manufacturing, distributing, or dispensing or [2] possessing with intent to manufacture, distribute, or dispense or [3] by bringing into the commonwealth a net weight of twenty-eight grams or more of cocaine," shall be punished depending on the total weight of the substance.[5] The indictment charging trafficking alleges

---

[3]The United States Supreme Court has linked a defendant's standing to challenge a search with the issue whether there was a search for Fourth Amendment purposes. See *United States* v. *Salvucci, supra* at 92-93; *Rakas* v. *Illinois*, 439 U.S. 128, 138-139 (1978). The Court has abandoned a separate inquiry into whether a defendant has standing to challenge the search, and has instead focused on whether the defendant had a legitimate expectation of privacy in the area searched. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980); *Rakas* v. *Illinois, supra.*

We stated in *Amendola* that a defendant will have standing to challenge a search if possession is an essential element of the crime with which he is charged. *Amendola, supra* at 601. Whether a defendant has standing under *Amendola* depends on allegations made by the Commonwealth, not on whether the defendant had a legitimate expectation of privacy in the area searched. We have, however, applied the "reasonable expectation of privacy" test to determine whether there has been a search for Fourth Amendment purposes. See *Commonwealth* v. *Pina*, 406 Mass. 540, 544-545 (1990); *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1990). In cases where possession is an essential element of the crime we think it is best to separate the issue of standing from the question whether there has been a search for constitutional purposes.

[4]Johnson was indicted in March, 1988. General Laws c. 94C, § 32E (*b*), was rewritten with an emergecy preamble in July, 1988. See St. 1988, c. 124.

[5]In order to establish trafficking under the statute, the Commonwealth does not have to show continuity of action or organizational structure. *Commonwealth* v. *Chappee*, 397 Mass. 508, 521-522 (1986). Instead, the Commonwealth must simply show that the defendant engaged in conduct which violated one of the three categories of activities set out in the statute. See *id.* at 522; *Commonwealth* v. *Silva*, 21 Mass. App. Ct. 536, 540-541 & n.7 (1986).

that Johnson engaged in activities which fell under one or more of the three categories of conduct proscribed by G. L. c. 94C, § 32E (*b*). Since possession is an essential element in two of the three categories of activities prohibited by the statute, and, since the facts as alleged by the Commonwealth indicate that Johnson possessed the seized cocaine with the intent to distribute or dispense it, we conclude that possession is an essential element of the trafficking charge brought against Johnson. Therefore, he has standing to challenge the search of Frazier's handbag as it relates to the trafficking indictment.[6]

We now turn to the conspiracy charge. "The heart of a conspiracy is the formulation of the unlawful agreement or combination. *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 493-494 (1921). The law of the Commonwealth does not require an overt act to complete a conspiracy. *Commonwealth* v. *Harris*, 232 Mass. 588, 591 (1919)." *Commonwealth* v. *Cantres*, 405 Mass. 238, 244 (1989), quoting *Commonwealth* v. *Pero*, 402 Mass. 476, 478 (1988). The Commonwealth, however, must prove that the defendant combined with another "with the intention to [commit the object crime]." *Commonwealth* v. *Cantres*, *supra*, quoting *Commonwealth* v. *Zakas*, 358 Mass. 265, 269 (1970). Possession of the cocaine is not an essential element of the conspiracy charge, and, therefore,

---

[6]The facts in *United States* v. *Fields*, 458 F.2d 1194 (3d Cir. 1972), cert. denied, 412 U.S. 927 (1973), are similar to the facts in the instant case. In *Fields*, a defendant was charged with trafficking in narcotics in violation of Federal statutes. The defendant sought to challenge the search of his travel companion's flight bag. The court stated that, since "actual or constructive possession of the seized narcotics was an essential element of each of the two charges upon which [the defendant] . . . [was] sentenced to imprisonment," he was entitled under *Jones* to "challenge the search." *Id.* at 1196. See *United States* v. *Oates*, 560 F.2d 45, 53-54 (2d Cir. 1972) (defendant charged with possession of heroin with intent to distribute has standing under *Jones* to challenge search of companion).

We do not decide that every defendant charged with trafficking in controlled substances under G. L. c. 94C, § 32E (*b*), has automatic standing to challenge a search. It is possible, for example, that the Commonwealth may allege facts involving the distribution or dispensation of narcotics which do not involve possession as an essential element.

Johnson does not have standing to challenge the search as it relates to the alleged conspiracy. See, e.g., *United States* v. *Rios*, 611 F.2d 1335, 1345-1346 (10th Cir. 1979) (no automatic standing under *Jones* since possession of narcotics is not essential element of conspiracy charge); *United States* v. *Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976), cert. denied sub nom. *Temple* v. *United States*, 429 U.S. 1063 (1977) (same).

3. *Conclusion.* The police did not have probable cause to arrest Frazier. Therefore, the search of her handbag was unlawful, and the evidence properly was suppressed as to her. Johnson had automatic standing to challenge the search as to the trafficking charge. Since the search was illegal as to Frazier for lack of probable cause, it was also illegal as to Johnson. Thus, Johnson's motion to suppress as it relates to the trafficking charge was improperly denied. Johnson, however, did not have standing to challenge the search as to the conspiracy charge. We remand the case for proceedings consistent with our opinion.

*So ordered.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). The purported reason for the "automatic standing" rule is to relieve criminal defendants from the perceived dilemma they face when seeking to exclude evidence in this type of crime. In *Simmons* v. *United States*, 390 U.S. 377 (1968), the United States Supreme Court held that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. The only remaining "dilemma" is that, if the defendant chooses to testify at trial in a manner inconsistent with his or her testimony at the suppression hearing, the prior inconsistent statements may possibly be introduced to challenge the witness's credibility (this issue has not yet been decided).

Nothing in the Massachusetts Constitution purports to protect a criminal defendant from the consequences of his

perjury. The court, however, interprets art. 14 of the Massa-chusetts Declaration of Rights to require a special rule designed to protect those that the court thinks are most likely to perjure themselves. The court holds that, in order to prevent perjury, the party most likely to commit perjury should be permitted to prevail without testifying at all. This is a strange result. Cf. *Commonwealth* v. *Panetti*, 406 Mass. 230, 235 (1989) (Nolan, J., dissenting). I enthusiastically dissent from this unwarranted and unsupported interpretation of our Declaration of Rights.