Cowin, J.
The defendant, Joseph Clancy, is charged in one indictment with carrying a firearm in violation of G.L.c. 269, § 10(a). The defendant has filed a motion to suppress a semiautomatic pistol with magazine and any testimony regarding the stop, search and seizure of those items. The defendant argues that the eyidene J ’ was the product of a warrantless and illegal stop, search and seizure.
A motion to suppress hearing was held at which three witnesses testified: Ms. Eartha Creech; her mother, Mrs. Creech;[1] and Braintree Officer Don Curtin, Jr.
*388 Based upon an assessment of the evidence presented, including the credibility of the witnesses, I make the following findings and rulings.[2]
FINDINGS
On September 9, 1991, sixteen-year old Eartha Creech (“Ms. Creech”) went to the South Shore Plaza (“Plaza”) in Braintree with her friend and next-door neighbor, Joseph Clancy (“Clancy”), and his girlfriend, Nicole Brackett (“Ms. Brackett”). While the three young people were at Brigham’s at the Plaza, Clancy left the two young women for two to three minutes and then returned. When he returned, the three agreed to go to Filene’s before leaving the Plaza.
At the men’s department of Filene’s, Clancy purchased a shirt. The three individuals went to the cash register to pay for the shirt. At that point, Clancy, without speaking, placed a gun in Ms. Creech’s lower right front jacket pocket. Ms. Creech felt the gun go into her pocket and she felt the weight of the gun in the pocket. The pocket in which the gun was placed also contained a single ring on a key ring.
Clancy and the women separated. Ms. Creech then noticed that police officers were speaking with Clancy, about sixteen feet away from where she and Ms. Brackett were standing. The two police officers were in uniform, and Ms. Creech recognized them as police.
Officer Donald Curtin, a Braintree police officer for seven and one-half years, was on duty September 9, 1991, and was sent by a radio dispatch to the South Shore Plaza. Officer Curtin was accompanied by Officer Johnston, another Braintree police officer.[3] The radio dispatcher indicated that a black male with a handgun had been in front of Brigham’s and was involved in some type of altercation. The black male had lifted his sweatshirt and displayed a handgun.[4] The officer was familiar with the South Shore Plaza and the location of Brigham’s. He knew that Brigham’s was adjacent to Filene’s within the mall enclosure.
When Officer Curtin arrived at the South Shore Plaza he went to the mall area outside Brigham’s and spoke with South Shore Plaza Security Officer James Irr. Officer Irr informed Officer Curtin that a male victim had told him (Officer Irr) that he (the victim) had been threatened by a black male who had raised his sweatshirt and shown a gun. The male victim had pointed out Clancy to Officer Irr as the man with the gun. The victim told Officer Irr that the man with the gun was with two females, one black and one white. Officer Irr stated that the black male who had shown the gun had gone to the men’s department of Filene’s in the company of two females. Officer Irr pointed out the three individuals, the defendant and the two females (one black and one white) to Officer Curtin.
Officer Irr told Officer Curtin that those three people in Filene’s were the three people who had come from Brigham’s, and that the black male was the one whom the victim identified as the person who had displayed the gun. Officer Irr stated that he had followed Clancy from Brigham’s to Filene’s. Officer Curtin observed that the two females were standing with the defendant and that Ms. Creech was right next to the defendant. The two women then separated from Clancy and Officer Curtin approached Clancy. The two women saw the two officers with Clancy and walked towards them.
Officer Curtin asked the defendant what he was doing there. The defendant stated he was there to buy a shirt. The officer asked the defendant if he had been out in the mall area. The officer does not remember the defendant’s response to that question. Officer Curtin then inquired whether the defendant had any weapons. The defendant said: “No, go ahead and check.” Officer Curtin responded by conducting a pat frisk of Clancy’s outer body; checking Clancy’s waistband by raising his sweatshirt where the gun had reportedly been seen and checking the upper body of the defendant. No weapon was found.
Officer Johnston was aware of this conversation and of the frisk of the defendant. Immediately after the pat frisk of the defendant, Officer Johnston asked Ms. Creech what was in her pocket. She said: “Nothing.” He asked her. “What is the bulge?” She answered: “Keys.” Officer Johnston then did a pat search and found and removed from Ms. Creech’s pocket a Galezi semiautomatic pistol with a magazine.[5]
Officer Curtin had observed the bulge in Ms. Creech’s pocket. It was visible that something was in the pocket, and that what was in the pocket was not consistent with keys. The pocket stuck out a little and was obviously weighted down.
Ms. Creech wore the same jacket to Court that she had worn to the Plaza on September 9, 1991. She also had in her pocket the same key on the same key ring that she had in her pocket on that date. The Court requested that Ms. Creech place in her jacket pocket the gun that had been taken from her at the Plaza. The same single key and key ring that were in Ms. Creech’s pocket on September 9, 1991 were also in her pocket at the hearing. The Court observed that the gun makes a noticeable bulge in the jacket pocket. In fact, the bulge is in the shape of a handgun. To someone involved in law enforcement and experienced with the shape and size of such weapons, the bulge in the pocket clearly appears to be a handgun.
Following the removal of the weapon from Ms. Creech’s pocket, she was arrested. The defendant then stated that the weapon was his and not Ms. Creech’s. Upon making that statement, he was arrested. He proceeded to retract the statement.
RULINGS OF LAW
The Commonwealth initially raised the question whether the defendant had standing to move to suppress the items and cited Commonwealth v. Amendola, 406 Mass. 592 (1990). Since the decision in Amendola, however, the Supreme Judicial Court has decided *389 Commonwealth v. Frazier, 410 Mass. 235 (1991). The Frazier case notes that in Commonwealth v. Arriendala the Supreme Judicial Court adopted the automatic standing rule of Jones v. U.S., 362 U.S. 257 (1960), for searches of automobiles and houses, but left “to a case-by-case analysis the question of whether the rule should be extended to other circumstances where possession crimes are an issue.” Frazier, supra at 243. In Frazier, the defendant was charged with trafficking in cocaine and challenged a search of his girlfriend’s handbag in which the cocaine had been found. In considering whether the defendant had standing to challenge the search, the Court simply stated that since possession is an essential element in regard to the activities charged, the defendant had standing to challenge the search of his girlfriend’s handbag. Frazier, supra at 245. The Court did not analyze whether the automatic standing rule of Jones should be extended beyond automobiles and houses to encompass the handbag of the girlfriend. The facts in Frazier are identical to those in the present case. Thus, in this case, because possession is an element of the crime charged, the Court concludes that the defendant Clancy has standing to challenge the search of Ms. Creech’s pocket.
In regard to the substance of the motion, not every interaction between citizens and police rises to the level of a stop. “Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen, may we conclude that a ‘seizure’ has occurred.” Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968). In the instant case, initially there was no stop of Ms. Creech.[6] Ms. Creech and her friend Ms. Brackett were talking when they saw the police with the defendant, and the two women approached the police. Officer Johnston then asked Ms. Creech some questions. Her ability to walk away was not impeded. A reasonable person would believe that he or she could walk away. Commonwealth v. Fraser, 410 Mass. 541 (1991). No stop had taken place at that point. Commonwealth v. Pimentel, 27 Mass.App.Ct. 557 (1989). It was only after Ms. Creech’s inconsistent and patently false answers to the officer’s questions and the unproductive pat frisk of the defendant that Officer Johnston pat-frisked Ms. Creech.
The following factors justified the Terry-type frisk of Ms. Creech. Minutes before the frisk, Clancy had been seen with a gun outside “Brigham’s,” a store that was adjacent to Filene’s; Clancy had been observed by the security officer going from Brigham’s to Filene’s with the two women; Clancy was seen by the police in Filene’s standing with the two women, right next to Ms. Creech; Clancy did not have a gun in his possession at that time; one of the women who had been seen standing right next to Clancy had something that appeared to be a gun in her pocket and she gave inconsistent and obviously false answers to the police regarding what was in her pocket. Indeed, there was more than the specific and articulable facts required for a Terry-type search in the situation that existed on September 9, 1991 in the South Shore Plaza. The scope of the search was justified by the circumstances which permitted it. Commonwealth v. Silva, 366 Mass. 402, 407 (1974).
It is also relevant that this series of incidents and the pat frisk occurred at the South Shore Plaza in the daytime. A prompt restraint and threshold search for weapons in a public place where there are risks to others has been justified on the basis of a specific report. See Commonwealth v. McCauley, 11 Mass.App.Ct. 780 (1984).
Further, even should the first encounter with Ms. Creech be deemed a stop, the Court rules that there was a sufficient basis for the limited questioning of her that occurred. The inconsistent answers that she then gave to the questions increased the suspicion of the officer, see Commonwealth v. Crowley, 29 Mass.App.Ct. 1, 4 (1990), and justify the pat search he conducted.
ORDER
For the foregoing reasons, the defendant’s motion to suppress is DENIED.

 The testimony of Eartha Creech’s mother was stricken after the hearing and has not been considered for purposes of this decision.

 Immediately following the hearing, the Court dictated findings, rulings and an order from the bench, indicating that a written decision with non-substantive revisions would be issued subsequently.

At the time of the hearing, Officer Johnston was in Florida.

 The two parties have stipulated that if the dispatcher had been present in court his testimony regarding the content of the dispatch would be consistent with the testimony of Officer Curtin.
The defendant stated at the hearing that he raises no issue of whether there were a factual basis for the radio dispatch. See Commonwealth v. Cheek, 413 Mass. 492 (1992).

 It has been stipulated that the weapon placed in evidence at the hearing was the weapon that Officer Curtin retrieved from Ms. Creech at the Plaza on September 9, 1991.

 Nothing was found on the defendant and no motion to suppress in regard to him was filed. The Court, therefore, does not consider the propriety of the police actions involving him.