Cowin, J.
The defendants Ramona Hewlett (“Hewlett") and Gary M. DiGregorio (“DiGregorio”) have each been charged in two indictments with trafficking in cocaine in violation of G.L.c. 94C, §32E(b)(1) and conspiracy to violate the controlled substances act, G.L.c. 94C, §40. Each defendant has filed a motion to suppress all evidence seized by the Holbrook and/or Weymouth police departments as a result of an allegedly illegal stop, search and seizure on September 1, 1992.
A hearing upon the motions to suppress was held at which two witnesses testified: Detective John Con-cannon and Maureen Willett, both of the Weymouth Police Department.
Based upon an assessment of the evidence presented, including the credibility of the witnesses, I make the following findings and rulings.
FINDINGS
On September 1, 1992, Detective John Concannon of the Weymouth Police Department, a member of the narcotics unit, was on duly about 2:00 p.m. in an unmarked cruiser. Detective Concannon had extensive training in drug investigation and had been involved in hundreds of drug arrests. Detective Concannon saw a black Cadillac with four passengers turn onto Derby Street from Route 18. Detective Con-cannon recognized the defendant Gary DiGregorio as a passenger in the car and one O’Brien as the driver. He did not recognize the other two occupants at that time.
Detective Concannon had been told by an informant about DiGregorio. Detective Concannon’s informant had provided information that led to the issuance of a search warrant by the Quincy District Court, execution of which resulted in the arrest and conviction of one Mark Donovan and the seizure of marijuana and money. This information was provided during December 1991 to February 1992 and the search warrant was issued in February 1992. The informant had also been involved in the investigation of another person for cocaine distribution.
The informant had provided information about Di-Gregorio to Detective Concannon more than a dozen times in the six months preceding September 1, 1992, most recently just the week before September 1, 1992. He told Detective Concannon that DiGregorio’s practice was to secrete cocaine in wooded areas in Wey-mouth, Abington and Holbrook to avoid having drugs at his home or in large amounts on his person. The informant also told the detective that Hewlett bought cocaine from the defendant numerous times.[1]
Detective Concannon had seen DiGregorio on July 26 or 27, 1992 when DiGregorio was exiting a house in Whitman which house was at that time under surveillance in a drug investigation. The detective had also seen DiGregorio, O’Brien and Hewlett in a wooded area on the Holbrook-Randolph line in late August 1992. They were crawling on their hands and knees through the woods as if searching for something on the ground. The car in which they had arrived was towed as it was unregistered and uninsured. The individuals left the area, came back about ten minutes later, and again appeared to be searching for something on the ground. The police confronted the people, but did not search them. The wooded area was searched by the police but nothing was found. At that time, no female officer was available to search Hewlett and she originally “declined” to be searched.[2] About fifteen minutes later, during which time Hewlett was not under observation, Hewlett volunteered to be searched. Apparently, she was not searched at that point. Detective Concannon believed that drugs would have been found on Hewlett had a female officer been available to search her at the time of the initial confrontation.[3]
On September 1, 1992, when Detective Concannon saw DiGregorio, the detective was aware of an outstanding warrant for DiGregorio’s arrest.[4] Concannon had known of and had verified the warrant a few days prior to September 1, 1992. The Detective did not go to DiGregorio’s house to arrest him because Di-Gregorio did not live in Weymouth.
On September 1, 1992, the Detective saw the car in which DiGregorio was a passenger stop at a small, wooded area in Weymouth. DiGregorio alighted from the car, went quickly into the woods and within about fifteen to twenty seconds came quickly out of the woods and returned to the car. The detective did not see the defendant carrying anything. The car then drove off. When the detective put his blue lights on at a traffic light, he saw the driver look at him and he motioned the driver over. The driver continued going, however, at speeds from five to forty miles per hour, several times pulling over as if to stop, but continuing on. About one-half mile into Holbrook (one and one-half miles after the Detective had begun following the car), the driver finally did stop. The driver turned in his seat, put his arms in the air and mouthed the words, “What do you want?” Just before the vehicle stopped, the officer confirmed the existence of the warrant for DiGregorio.
*266 During the time the detective was following the car, he saw DiGregorio turn to his left to look over his shoulder as if to see who was behind him. The defendant then bent out of view twice so that the officer could not see what he was doing. There was a female in the rear seat[5] who also briefly disappeared from view.
After the vehicle stopped and a back-up unit had arrived, the officer went to the driver’s door. The window was open. The officer ordered O’Brien to shut his vehicle off. O’Brien did not comply until the third or fourth request. Detective Concannon then arrested O’Brien for failure to stop for a police officer, and had him exit the car. O’Brien was searched and no contraband was found on him.
Detective Concannon advised the remaining occupants of the car of their Miranda rights which they said they understood. Other cruisers arrived. The detective told the defendant his suspicions about the woods. He stated that he believed there was cocaine in the car and was going to search the car and its occupants. The car’s occupants were not free to leave.
The detective asked DiGregorio to step from the car. When he did so, the detective arrested him on the outstanding warrant and searched him. No contraband was found. DiGregorio was handcuffed and placed in a cruiser. The stop of the car in order to execute the arrest warrant for defendant DiGregorio was not a pretextual stop or arrest. Commonwealth v. Ceria, 13 Mass.App.Ct. 230 (1982).
Detective Concannon next asked the man in the left passenger seat (one Myers) to get out of the car. The detective searched him and then allowed him to leave. Detective Concannon searched the passenger area of the car and the trunk for drugs and weapons and found no contraband.
The fourth passenger was the female defendant in this case, Hewlett. Detective Concannon observed that her pants were fastened and zipped up at this time. He did not see any suspicious bulges in Hewlett’s clothing.
The detective radioed to the Weymouth Police Department to request a matron for a search of the female. The matron, Maureen Willett, arrived about fifteen minutes after Detective Concannon had originally stopped the car. Detective Concannon instructed the matron to conduct a body search of Ms. Hewlett. A body search did not include examining body cavities, but did include checking all clothing, including underwear.
When the matron first arrived at the scene, she observed Hewlett in the car with her dungarees “down” and unzipped. Hewlett told the matron that her pants “did not fit.” The matron had Hewlett exit the car and walk toward the nearest house. At this time, Hewlett’s pants were pulled up but still unzipped. She was not handcuffed. As they walked, the matron held Hewlett’s left arm and Hewlett had a hair ornament wrapped around her right hand. After Hewlett and the matron had walked about twenty feet, the matron observed something fall to the ground from Hewlett’s hand. The matron looked at Hewlett’s hand and saw that it was open. Matron Willett called Detective Concannon to the area. Detective Concannon picked up aplastic bag and saw a fairly large amount of white powder in it.[6]
RULINGS OF LAW
The legitimacy of an arrest for one offense ordinarily does not depend on whether the officer subjectively believed that the arrest might lead to incriminating information regarding another offense. Commonwealth v. Ceria, 13 Mass.App.Ct. 230, 235 (1982).
There is no issue as to the search of DiGregorio as nothing was found on him. DiGregorio does have standing, however, to contest the search of Hewlett. See Commonwealth v. Frazier, 410 Mass. 235 (1991) (since possession is an essential element of crime charged, defendant had standing to challenge the search of his girlfriend’s handbag).
As to the search of Hewlett, she could not be searched merely because she was an occupant of a car in which others were arrested. United States v. DiRe, 332 U.S. 581, 587 (1948). She was detained and held for a search without a warrant. A warrantless search is inherently suspect unless it falls within an exception to the warrant requirement. Commonwealth v. Frazier, supra at 239. The burden is on the Commonwealth to justify this warrantless search. Commonwealth v. Brisson, 31 Mass.App.Ct. 18, 421 (1991).
There was probable cause to search Hewlett.[7] Detective Concannon was in possession of reasonably trustworthy information to warrant a person of reasonable caution in believing that an offense has been or is being committed. Brinegar v. U.S., 33 U.S. 160 (1949). Probable cause is established in this case from the informant’s tips and from the police observation of facts that corroborated that information.
As to the informant’s information, when an informant’s tip is used by the police to justify probable cause, it must meet both prongs of the two-pronged test set out in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. UnitedStates, 393 U.S. 410 (1969). The Commonwealth must satisfy both the veracity test and the basis of knowledge test. Commonwealth v. Bakoian, 412 Mass. 295 (1992). Deficiencies in proof under either or both prongs of the test may be compensated by police corroboration of an informant’s detailed tip. Commonwealth v. Ramon, 31 Mass.App.Ct. 963 (1992).
As to the veracity test, the informant’s past reliability is established by the fact that she gave information leading to the arrest and conviction in 1992 of a named individual, Mark Donovan, in Quincy District Court. Her information in this instance also resulted in the seizure of marijuana and money. This information *267 satisfies the veracity prong of the test. See Commonwealth v. Byfield, 413 Mass. 426 (1992).
As to the basis of knowledge test, nonobvious details must be provided which are not “easily obtainable by an uninformed bystander.” Commonwealth v. Bakoian, supra, at 301, quoting from Commonwealth v. Lyons, 409 Mass. 16, 21 (1990). Here, the informant told Detective Concannon that DiGregorio hid his drugs in the woods in Weymouth, Abington and Holbrook. This is information that could be gleaned only by a participant in or witness to these actions, i.e., these are details not easily obtainable by an uninformed bystander. Detective Concannon then corroborated this information. He observed Di-Gregorio, O’Brien and Hewlett in the woods in Holbrook in August 1992. They appeared to be searching for something on the ground. Again on September 1, 1992, Detective Concannon saw DiGregorio go into the woods. This time DiGregorio was in the woods for only 15-20 seconds. This is too brief a period to do anything constructive in the woods. It is, however, a period of time consistent with retrieving a stash of drugs. Further, DiGregorio emerged from the woods carrying nothing that was visible to the officer. Thus, there was police corroboration of nonobvious details. Any deficiency in the basis of knowledge prong has been satisfied by police corroboration. Accordingly, the Aguilar-Spinelli tests of veracity and basis of knowledge have been satisfied.
Probable cause for the search is established by the informant’s tip together with Detective Concannon’s observations on September 1. On that day, Detective Concannon saw DiGregorio engaging in the precise conduct that the informant had described, conduct consistent with drug distribution activity. The information and the observations were sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed.
Another factor buttresses the determination that probable cause existed here. Detective Concannon had information that Hewlett bought drugs from Di-Gregorio. Hewlett and DiGregorio were together on the day in August when they went into the woods and again on September 1, when DiGregorio went into the woods for a very brief time. The modus operandi was consistent with involvement in drug dealing and Hewlett has been associated with it. Cf. Commonwealth v. Frazier, supra (a person may not be arrested based on mere suspicion and association with another, even if there is probable cause to believe that the latter committed a crime).[8] The wait of fifteen minutes for the matron to conduct the search was not unreasonable.
ORDER
For the foregoing reasons, the defendants’ motions to suppress are DENIED.

 There was no evidence when the informant said this or when these purchases were made.

 There was no evidence as to whether the others present in the woods were asked if they would consent to a search.

 The evidence was that no one was searched at the time of this confrontation.

 There was no evidence as to the underlying offense for which the warrant had been issued.

 The female was the defendant Hewlett.

 Although there was no further evidence regarding the contents of the bag, it would appear that it contained fourteen grams or more of cocaine as the defendants were indicted for trafficking in cocaine, fourteen grams or more.

 The requirements of probable cause for a search are the same in these circumstances as those for arrest, see Commonwealth v. Tarver, 369 Mass. 302, 307 (1975). It is not important whether the arrest occurs just before, immediately after, or concurrently with the search. Commonwealth v. Rivera, 27 Mass.App.Ct. 41, 43, n.2 (1989).

 The fact that Hewlett’s dungarees were observed by the matron to be “down" and unzipped after Detective Concannon had seen them fastened and zipped is not relevant to a decision as to probable cause to search. Even though probable cause is determined by the knowledge of all police officers involved, see Commonwealth v. Marlborough, 21 Mass.App.Ct. 944 (1986), this observation by the matron occurred only after Hewlett had been detained for fifteen minutes for the purpose of conducting a search.