McHugh, J.
Defendant Severeano Tavarez has been charged with trafficking in cocaine. He has brought a series of motions to suppress various items of evidence seized during the course of the investigation. For the following reasons those motions are decided in the following fashion:
I. SEARCH WARRANT (APARTMENTS)
Defendant first moves to suppress the fruits of searches conducted at 7 Liberty Square, Lynn, Massachusetts and 5 Hamilton Avenue, Lynn, Massachusetts pursuant to warrants issued on November 27, 1993.[1] Defendant challenges the lawfulness of the search by alleging that the information in the application for the warrants was insufficient to support probable cause for their issuance. More specifically, defendant maintains that the informant information contained in the applicant’s affidavit did not meet the AguHar-Spinelli standards. SeeAguilarv. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969).
I disagree. First, the warrants issued by the magistrate were the product of an essentially independent, thorough and carefully-conducted investigation carried out by the State Police after police received the informant’s initial information. Corroboration of informant information that does not meet the AguilarSpinellitest can and often does remedy that deficiency. Commonwealth v. Spano, 414 Mass. 178, 185 (1993); Commonwealth v. Upton, 394 Mass. 363, 374-75 (1985). Moreover, even if the informant’s information were entirely stricken from the affidavit, an ample basis for issuance of the warrants would remain.
Beyond that, however, the information in the affidavit fully complies with the Aguilar-Spinelli standards. Paragraph two of the affidavit supplies information as to the confidential informant’s reliability. It is difficult to imagine a more demonstrably *432 reliable informant than one who has the credentials detailed in paragraph two. Indeed, on an almost routine basis, the informant led police to major drug traffickers and the product of their trade. Information provided by the informant thus did not simply lead to arrests. Compare Commonwealth v. Rojas, 403 Mass. 483, 486 (1988). Instead, that information produced arrests plus convictions and seizure of very substantial quantities of cocaine. ‘This distinction is critical.” Commonwealth v. Perez-Baez, 410 Mass. 43, 46 (1991).
The informant’s knowledge was based on his own dealing with defendant, dealing detailed in paragraph three of the affidavit and corroborated by the entire course of events in which the officers thereafter participated. The information in the affidavit presented a sufficient, and sufficiently fresh, nexus between criminal activity and the locations for which the warrant was obtained. See Commonwealth v. Vynorius, 369 Mass. 17, 25 (1975); Commonwealth v. Distefano, 22 Mass.App.Ct. 535, 540-41 (1986).
II. SEARCH WARRANT (Wiretap)
Defendant next seeks to suppress the fruits of a wiretap authorized pursuant to G.L.c. 276, §§1 et seq. and Commonwealth v. Blood, 400 Mass. 61 (1987). Defendant contends that the warrant authorizing the wiretap was improperly issued and thus that its fruits should be suppressed.[2]
Here, as earlier, defendant contends that the information supplied by the confidential informant and incorporated in the affidavit used to secure the wiretap warrant did not meet the Aguilar-Spinelli standard. Insofar as the informant’s reliability is concerned, however, paragraph two of the affidavit is identical to paragraph two of the affidavit just canvassed. The informant’s reliability is abundantly established.
The affidavit shows that the informant’s knowledge is again based on his own dealing with defendant. The informant’s observations were amply corroborated by the officers’ observations and participation in negotiations with defendant for a sale of a substantial quantity of cocaine. The warrant sought by and issued to authorities only permitted them to record telephone or face-to-face conversations between the troopers conducting the investigation and the defendant, or those participating with the defendant in the sale of narcotics, or between the confidential informant and the defendant and his cohorts. The factual recitations contained in the first affidavit, considered alone, and in the two affidavits, considered together, clearly provided probable cause for the warrant’s issuance.
Defendant also contends, however, that there was an insufficient showing of “necessity” for recording conversations to justify issuance of the warrant. See G.L.c. 272, §9E(3). In making that assertion, defendant claims that the affidavit failed to set out facts demonstrating “that normal investigative procedures [had] been tried and [had] failed or reasonably appeared unlikely to succeed if tried."® Here the affiant, in paragraph nine of his affidavit, stated that the warrant was necessary in order to maintain an accurate record of the conversations between himself and the confidential informant, on the one hand, and the defendant and his cohorts, on the other, as well as to insure that threats were not made against the confidential informant that would prevent him from testifying at trial if his testimony became necessary. Those recitations provided an adequate showing of necessity, not, perhaps, for a wiretap of the type commonly conceived, but for a far narrower warrant only allowing police to record conversations they or the informant could have recited on the witness stand in any event. One should employ a common-sense approach to the necessity requirement. When that approach is used, necessity for the limited “interception” police sought here is adequately demonstrated. See generally Commonwealth v. Fenderson, 410 Mass. 82, 83-84 (1991).
III. Search Warrant (Commonwealth v. Guaba)
Defendant next contends that the fruits of the search at 5 Hamilton Avenue in Lynn should be suppressed because, although the search was undertaken pursuant to a warrant, the warrant was not at the site of the search until after the search began. Defendant maintains that under the principles articulated in Commonwealth v. Guaba, 417 Mass. 746 (1994), a case decided on May 11, 1994, the resulting search was therefore invalid.
A factual hearing was necessary for a decision on the Guaba issue defendant raised. Based on the testimony presented during the course of the hearing, and the reasonable inferences I have drawn from that testimony, I find that Trooper John C. Henley, a seventeen-year veteran of the Massachusetts State Police now assigned to the Attorney General’s office, went to the apartment at 5 Hamilton Place on the evening of November 23, 1993 at approximately 8:00 p.m., shortly after defendant had been arrested at another location. Trooper Henley’s mission was to gain entry to the apartment and “to secure it” until a search warrant could be procured.[4] Trooper Henley was accompanied by three other officers.
When the troopers arrived at 5 Hamilton Place, they went to apartment #2 on the second floor. Trooper Henley knocked on the door and a woman answered. She identified herself as Mrs. Delacruz and said she lived there. The troopers explained their mission to Mrs. Delacruz, who spoke little English. The troopers then entered the apartment. There, in addition to Mrs. Delacruz, they found a group of children, including Mrs. Delacruz’ daughter. The troopers gathered into the living room all of the apartment’s occupants. Mrs. Delacruz telephoned the other children’ parents who came and retrieved them. Thereafter, Mrs. Delacruz and her daughter were left in the apartment in the troopers’ company.
The troopers, Mrs. Delacruz and her daughter all sat in the apartment’s living room for the next two and *433 one-half hours. No search occurred. There was little communication between the troopers and Mrs. Delacruz.
At approximately 11:00 p.m., Trooper Jamie Cepero, another Massachusetts State Police officer assigned to the Attorney General’s office, telephoned the apartment to report, accurately, that he was at the Lynn Police Station and had just obtained a search warrant authorizing a search of apartment #2. Trooper Cepero said that the warrant was then in effect and that the search could begin. Trooper Cepero had the warrant[5] in his possession at the time of his call.
After receiving Trooper Cepero’s call, Trooper Henley notified the other three troopers that the search could begin. A female trooper took Mrs. Delacruz into a bedroom and searched her. Nothing incriminating was found. Simultaneously, the troopers divided up the apartment’s other rooms and began searching those rooms. The searches proceeded with customary thoroughness.
At approximately 11:15 p.m., after the search had been in progress for approximately fifteen minutes, Trooper Cepero arrived on the scene, warrant in hand. He learned from the other troopers that Mrs. Delacruz was the apartment’s occupant and that she spoke little English. Accordingly, Trooper Cepero, who speaks Spanish, explained to her that he had a warrant and what the warrant empowered the officers to do. He also displayed the warrant to her. Thereafter various items of contraband, including a half kilogram of cocaine, were found on the premises. Nothing of an incriminating nature was found on the premises before the warrant arrived and nothing the officers observed in the apartment prior to the warrant’s arrival facilitated, aided or otherwise led to their discovery of incriminating evidence after the warrant was there.
Those facts raise two primary questions. First is whether Commonwealth v. Gauba applies retroactively to a search, like this one, conducted before Guaba was announced. The second question is whether, if Guaba does apply, the principles of Guaba control a case in which a search began before the warrant arrived but yielded nothing of evidentiary value until the warrant was present.[6]
The threshold question when considering retroactivity is whether Guaba announced a “new” rule or whether Guaba, although a case of first impression, simply amounted to a new application of settled principle. Decisional law is usually retroactive. Commonwealth v. Breese, 389 Mass. 540, 541 (1983). When a decision announces a new rule amounting to a “clear break with the past,” however, that decision sometimes applies only prospectively. See generally id. See also Desist v. United States, 394 U.S. 244, 248 (1969).
Defining “newness” for purposes of analyzing retro-activity is not invariably a simple task.
The requirement of newness has been stated in various ways. In Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971), the Supreme Court declared that in order for one of its decisions “to be applied non-retroactively [it] must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . .” See Desist v. United States, 394 U.S. 244, 248 (1969) (for decision to be applied prospectively only, it must be “a clear break with the past”); Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 499 (1968) (question of non-retroactive application of decision not presented unless decision “constitute[d] a sharp break in the line of earlier authority or an avulsive change which caused the current of the law thereafter to flow between new banks”).
Commonwealth v. Breese, supra, 389 Mass at 542. Accord Commonwealth v. Ennis, 398 Mass. 170, 173-74 (1986).[7]
In my view, Guaba did not announce a new rule. In Commonwealth v. Rutowski, 406 Mass. 673 (1990), the Court invalidated a search because the warrant described the goods to be seized as those “more specifically detailed in the supporting affidavit.” Although the affidavit had been attached to the application for the warrant and presented to the magistrate before the warrant issued, it was not attached to the warrant itself and thus was not present at the scene while the search was being conducted. Id. at 674. The Court invalidated the search on the theory that
[e]vidence should be suppressed in order to deter future police misconduct when, pursuant to a general warrant, the police carry out a search without any document in hand adequately describing the items for which they purport to be searching. The absence from the defendant’s premises of a document which would have furnished detailed information to guide the scope of the search and to inform the defendant of that scope is not merely a technical omission. That omission contravenes the fundamental purpose of the statutory and constitutional prohibitions against the use of a general warrant.
Id. at 677. If the absence of a material portion of a warrant was sufficient to invalidate the subsequent search in Rutowski, surely it could come as no surprise to anyone thereafter — even if the question, although undecided, were open to a reasonable question before— that the absence of any warrant at all invalidated a subsequent search. Guaba therefore applies, at the very least, to all cases like this one in which no final judgment has entered and in which the search occurred after the decision in Rutowski See generally, e.g., Commonwealth v. Walter R., 414 Mass. 714, 719 (1992); Commonwealth v. Breese, 389 Mass. 540, 541 (1983).[8]
Turning to substance, I am of the opinion that this case is indistinguishable in principle from Guaba. In Guaba, police arrested defendant in possession of a *434 large quantity of cocaine at a location other than the apartment in question. They then decided to obtain a search warrant for the apartment.
Anticipating that a search warrant would be issued, the . . . officers proceeded to [the apartment] to secure the premises.
At the apartment, the police found Sandra Rodriguez and two young children. The police informed her that the defendant had been arrested and that they were seeking a search warrant for the apartment. They did not conduct a search at this time. The police waited until they received a call from Detective Lynch informing them that a search warrant had been issued. The police then searched the apartment and seized cocaine, cash, and paraphernalia used to distribute cocaine. Before the search was completed, Detective Lynch arrived with the warrant. Subsequently, the defendant was indicted on charges of trafficking in cocaine in violation of G.L.c. 94C, 32E (1992 ed.), and conspiracy to violate a controlled substance law in violation of G.L.c. 94C, 40 (1992 ed.).
Commonwealth v. Guaba, supra, 417 Mass, at 747-48. Those facts are virtually identical to the facts of this case.
To be sure, the court in Guaba did not discuss when in relation to arrival of the warrant the police found contraband. It did not do so because the precise timing of the warrant’s arrival was apparently irrelevant. Indeed, Guaba’s holding was that
where a warrant is required, a search by law enforcement officials, even if conducted within the scope of the warrant, without the document exhibiting their authority to search is unreasonable per se. The failure of the police to possess a copy of the warrant when they commenced searching the apartment rendered the search warrantless.
Id. at 755 (emphasis added).[9]
The Court’s focus on the warrant’s presence at the outset of the search was functionally related to the reason for the rule itself. As the court put it,
The presence of the warrant at the search serves several purposes. The warrant guides law enforcement officials as to the permissible scope of the search, particularly describing both the area to be searched and the items to be seized. Furthermore, the presence of the warrant serves to put the occupant whose premises are to be searched on notice of the police’s authority to search and the reasons for the search . . . Even assuming that the officers were without the need of the warrant to guide them as to the items to be seized because the warrant in this case authorized the seizure of drugs, the warrant also guides the law enforcement officials as to which premises they are authorized to search.
Id. at 755. Those purposes are served only if the warrant is present as the search begins.
In sum, there is no principled difference between the search in this case and the search in Guaba. Because the warrant was not present when the search of the premises at 5 Hamilton Avenue began, the search must be treated as if it had been conducted without a warrant. The Commonwealth has offered no justification for a warrantless search, see Commonwealth v. Santiago, 410 Mass. 737, 744 (1991); Commonwealth v. Dunn, 34 Mass.App.Ct. 702, 703 (1993), and thus the fruits of the search must be suppressed.
ORDER
In light of the foregoing, it is hereby ORDERED that
1. Defendant’s Motion to Suppress on grounds of a defective warrant is DENIED.
2. Defendant’s Motion to Suppress the fruits of the warrant authorizing interception of oral communications is DENIED.
3. Defendant’s Motion to Suppress the fruits of the search at 5 Hamilton Avenue in Lynn, Massachusetts is ALLOWED to the extent that defendant is charged with possessing any item seized during that search and is otherwise DENIED for lack of standing.

The precise relationship between defendant and those two apartments is not free from doubt. It appears in the detailed affidavit filed in support of the issuance of the warrant, however, that defendant lived at 7 Liberty Square and used the apartment at 5 Hamilton Avenue in furtherance of a drug distribution enterprise. In any event, I assume that defendant has “automatic standing” to challenge search at the latter address if and to the extent that he is charged with possessing the cocaine seized there. Commonwealth v. Frazier, 410 Mass. 235, 243-44 (1991). Neither side has focussed on that issue and, because of the result I have reached, I need not focus on it either.

Once again, neither party has focussed on the issue of standing. Again because of the result I have reached, I do not need to pause for an analysis of the type outlined in Commonwealth v. Price, 408 Mass. 668, 671-73 (1990).

Neither side claims that Trooper Henley’s entry for that purpose was impermissible. See generally Commonwealth v. Blake, 413 Mass. 823, 829-30 (1992).

The warrant was marked as Exhibit 2 at the hearing.

Here, although again neither side has addressed the issue, the question of standing cannot be finessed with the facility it was earlier. See nn. 1,2, supra Defendant has the burden of demonstrating that he has “standing” to challenge the search. Commonwealth v. Comodino, 368 Mass. 411, 415 (1975). As stated, he has “automatic standing” to challenge the search to the extent he is charged with possessing any of the cocaine seized from the apartment. Commonwealth v. Frazier, 410 Mass. 235, 243 (1991). If, and to the extent he is not charged with possessing that cocaine, however, he must establish both that he had a reasonable expectation of privacy in the apartment’s contents and that that expectation is one society is prepared to recognize as legitimate. Id. at 244, n.3; Commonwealth v. Price, 408 Mass. 668, 671-73 (1990). De *435 fendant here has done neither. Accordingly, the following analysis and order effectively prohibit the Commonwealth only from claiming at trial that defendant possessed the cocaine discovered at 5 Hamilton Avenue.

Nevertheless, the Supreme Judicial Court also has said that “the fact that a court says that its decision is within the ‘logical compass’ of an earlier decision, or indeed that it is ‘controlled’ by a prior decision, is not conclusive for purposes of deciding whether the current decision is a ‘new rule’ for retroactivity purposes. Commonwealth v. Bray, 407 Mass. 296, 302-03 (1989).

The Commonwealth argues that Guaba announced a new rule and that Breese therefore requires application of the Guaba rule only to searches conducted thereafter. Even if I were to agree that Guaba announced a new rule, the holding in Breese would not help the Commonwealth for that holding applied a “new” rule to all “cases tried after” the decision Breese discussed. This case will be “tried after” Guaba. Commonwealth v. Walter R., 414 Mass. 714, 719 (1993), applied the principles articulated in an earlier case to “any act committed after” the date that case was decided. Perhaps Walter R. provides a point of departure more helpful to the Commonwealth. Unfortunately, however, this area, like many, is controlled by a number of different principles without clear lines of intersection. The term “retroactive” is not self-defining. When as in Breese, a “non-retroactive” “new” rule governing the conduct of a trial is announced, that rule is sometimes applied only to cases “tried after” the “new” rule’s announcement. See Commonwealth v. Waters, 400 Mass. 1006 (1987) (rescript); Commonwealth v. Dyke, 394 Mass. 32, 37-38 (1985); Commonwealth v. Paszko, 391 Mass. 164, 182 (1984); Breese, supra, 389 Mass, at 541; Commonwealth v. Rodriguez, 370 Mass. 684, 687 (1976). At other times, the non-retroactive “new” rule governing trial conduct is applied to cases pending on direct appeal or as to which the time for direct appeal had not expired as of the date of the “new” rule’s announcement, Commonwealth v. Smith, 403 Mass. 489, 497 n.1 (1988); Commonwealth v. Pidge, 400 Mass. 350, 354 (1987); Commonwealth v. Bellamy, 391 Mass. 511, 515 (1984); Commonwealth v. Parham, 390 Mass. 833, 846 (1984); Commonwealth v. Moran, 387 Mass. 644, 651 n.3 (1972), although, more recently, that application has been called “retroactive” application. Commonwealth v. Figueroa, 413 Mass. 193, 202 (1992); Commonwealth v. Bembury, 406 Mass. 552, 558 n.3 (1990); Commonwealth v. Libran, 405 Mass. 634, 645 (1989). When the “non-retroactive” “new” rule applies to primary conduct, it has been applied to acts committed after the rule was announced. Commonwealth v. Walter R., supra, 414 Mass, at 719-20 (1993). At the same time, when the “new” rule applies, and is designed to deter undesirable police conduct, that rule, although not “retroactive,” is sometimes applied to suppression motions made after the date of the relevant decision even though those motions may involve conduct that occurred before the “new” rule was announced. See Commonwealth v. Day, 387 Mass, 915, 921 n. 10 (1983). In addition, uniform criteria are not applied to determine whether a “new” rule is retroactive. Sometimes the retroactivity decision is made on the basis of criteria set out in Stovall v. Denno, 388 U.S. 292, 297 (1967). See, e.g., Commonwealth v. Figueroa, supra, 413 Mass, at 202 (1992); Commonwealth v. Paszko, supra, 391 Mass, at 180; Breese, supra, 389 Mass, at 548-49. Sometimes the fact that the rule is not constitutionally compelled appears tobe the sole factor considered in deciding the retroactivity question. See Commonwealth v. Parham, supra, 390 Mass, at 838 n.3; sometimes the criteria are different when the case involves a collateral attack on a final judgment. Commonwealth v. Bray, 407 Mass. 296, 300-01 (1990). Were the rule in Guaba a“new” rule, I am of the opinion that it should apply only to searches carried out after the decision was announced and thus should not reach the search conducted in this case. Obviously a “new" rule cannot deter conduct that occurred before the decision was announced. Moreover, applying a “new ” deterrent rule to antedating conduct confers on a defendant a windfall devoid of any countervailing social benefit.

Earlier, the Court stated that the question whether the warrant was at the scene when the search began was the only question it was even considering:
The motion judge determined, and there is no contention otherwise, that the search was commenced after the issuance of the warrant and that the warrant was validly issued. Our inquiry is limited to whether the police’s failure to possess the warrant in hand at the beginning of the search renders the search illegal and, if it does, whether suppression is required.
Id. at 753. While reasoning minds may differ over the efficacy of prophylactic rules designed to deter undesirable police behavior, if such a rule is adopted, there is much to be said for adopting one with bright lines.

The warrant was issued pursuant to G.L.c. 276, §§1 et seq. although the provisions of law dealing with interception of oral communications are detailed in G.L.c. 272, §99. Where the Legislature has enacted a statute containing detailed provisions dealing with specific matters against the backdrop of a more general statute, both are to be construed in harmony but the specific provisions of the former control. Commonwealth v. Hudson, 404 Mass. 282, 286 (1989). Although the warrant was issued under the provisions of c. 276, therefore, I assume that the more focused provisions of c. 272, §99 are applicable.