## Commonwealth vs. Miguel Angel Mora.

Essex. January 4, 1988. - April 21, 1988.

Present: Wilkins, Abrams, Nolan, Lynch, & O'Connor, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Expectation of privacy, Standing to object. *Evidence*, Relevancy and materiality, Prior misconduct, Motive.

A criminal defendant who did not assert or demonstrate that he had a legitimate expectation of privacy in premises that were searched by police had no standing to challenge the legality of the search under the Fourth and Fourteenth Amendments to the United States Constitution. [265]

A criminal defendant, charged with offenses as a result of the search of an apartment by police officers, had no basis to assert that he was entitled to "automatic standing" to challenge the legality of the search under principles stated in *Jones* v. *United States*, 362 U.S. 257 (1960), to the extent they might be embodied in art. 14 of the Massachusetts Declaration of Rights, where he was not in possession of the seized items nor was he on the premises, in which he had no interest, at the time the apartment was searched. [266-267]

No error occurred at a criminal trial in the admission of evidence of the nature of the relationship between a defendant charged with possession of a sawed-off shotgun and his intended victim, nor was the evidence too remote to have probative value. [267-268]

Indictments found and returned in the Superior Court Department on July 10, 1985.

A motion to suppress evidence was heard by *Peter F. Brady*, J., and the cases were tried before *John L. Murphy, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Diana L. Maldonado*, Committee for Public Counsel Services, for the defendant.

*Judith Fabricant*, Assistant District Attorney, for the Commonwealth.

Abrams, J. Convicted of receiving stolen property, G. L. c. 266, § 60 (1986 ed.), and possession of a sawed-off shotgun,

G. L. c. 269, § 10 (c) (1986 ed.),[1] Miguel Angel Mora appeals, alleging error in the denial of his motion to suppress on the ground of his lack of standing to object to the search of another person's apartment and in the admission of evidence concerning his past relationship with Carmen Lopez. We granted the defendant's application for direct appellate review. We affirm.

1. *Motion to suppress.* We summarize the facts pertinent to the motion to suppress. On Friday, June 7, 1985, Hector Lopez hailed a police cruiser on Franklin Street in Lynn to report that, moments earlier, an individual he knew as "Nuevo,"[2] his sister's former boyfriend, had invited him to the first-floor apartment of a multi-family house next to the La Fe Market on Essex Street. At the apartment, Nuevo showed Lopez a sawed-off shotgun and shells. Nuevo said that he would use the shotgun to kill Lopez's sister, Carmen, that night because she was "running around." After flagging down the cruiser, Lopez went to Central Square in Lynn to meet with a police sergeant and other police officers.

Lopez told the officers that Nuevo hid the sawed-off shotgun between the mattress and box spring of a bed in the right bedroom of the first-floor apartment.[3] Lopez said he left Nuevo in the apartment ten minutes earlier; however, he doubted that Nuevo was still in the apartment. He told the officers that Nuevo probably left to look for Carmen.

Lopez told the officers that Nuevo did not have a permit for the shotgun. He also said that his sister Carmen had obtained a restraining order against Nuevo. The police confirmed that Carmen Lopez had obtained a restraining order pursuant to G. L. c. 209A (1986 ed.) against one Miguel Angel Mora. After noting Lopez's sober and agitated demeanor and confirm-

---

[1] The defendant also was convicted of possession of a Class B substance. That conviction was placed on file without objection and thus is not before us. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 437-438 (1975).

[2] Hector Lopez knew the defendant Mora's street name as "Nuevo." Lopez did not know the defendant's correct name.

[3] Lopez did not know the correct address of the building in which the gun was hidden.

ing the fact that Lopez's sister had obtained a restraining order against the defendant, the officers believed Lopez to be credible and reliable.

A sergeant familiar with the area around the La Fe Market knew the area as one with multiple dwellings and commercial enterprises. The area generally was congested with automobile and pedestrian traffic. The sergeant determined that it would require six officers to secure the apartment building in question, the address of which was determined to be 412 Essex Street.

Given the nature of Lopez's report, the sergeant believed that immediate action was necessary. The police decided to search for Nuevo and the shotgun at the apartment where Lopez had seen him. Although the sergeant knew that a clerk magistrate was assigned to respond to requests for search warrants, he decided that he should not postpone the search of the apartment for the time necessary to obtain the warrant (approximately two hours in his estimation) because he did not know whether Nuevo was armed and at-large.

The police officers and Lopez then proceeded to 412 Essex Street. Officers were posted at the front and rear entrances of the building. The sergeant and other officers went to the first-floor apartment and knocked at the door. There was no response. The police knocked again, pushed open the already partially opened door and announced their presence. Consistent with Lopez's statement, an officer found the shotgun between the mattress and box spring of the bed in the right bedroom. The search of the apartment took less than two minutes. The sergeant sent officers with Lopez to search the neighborhood for the defendant. Within a few minutes, the officers located the defendant and arrested him.

The defendant filed a motion to suppress "all items seized . . . pursuant to a search of an apartment and his person on June 7, 1985." The defendant objected to the search on Federal and State constitutional grounds. The defendant's motion claimed that the search was without a warrant, without probable cause, and nonconsensual. Neither the motion nor the affidavit asserted any interest by the defendant in the first-floor apartment at 412 Essex Street. After arrest, the defendant was

booked. At the booking, the defendant gave his address as 444 Essex Street. The judge concluded that the defendant had no standing to challenge the search of the apartment at 412 Essex Street.[4]

The defendant contends that he has standing to challenge the seizure under the Fourth and Fourteenth Amendments to the United States Constitution as well as under art. 14 of the Massachusetts Declaration of Rights. The defendant asserts that, under art. 14, this court should grant him "automatic standing" to challenge the warrantless search, and that, even if he is not entitled to "automatic standing," he possessed a legitimate expectation of privacy in the premises at 412 Essex Street. We do not agree.

As the defendant correctly notes, Federal law requires that a defendant hold a legitimate expectation of privacy in the place that is searched. The defendant has not demonstrated any interest in the premises searched. At the hearing on the motion, the defendant did not claim to be the tenant, to have lived in the apartment at any time, or to have been present at the time of the search.[5] As far as the hearing on the motion shows, this apartment was the home of some unknown third party. The defendant claims without any authority that, if Lopez is to be believed, the defendant's invitation to Lopez to come into the apartment indicates sufficient interest in the premises to confer standing. Federal law does not support such a conclusion. See, e.g., *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980); *United States* v. *Salvucci*, 448 U.S. 83, 93 (1980); *Rakas* v. *Illinois*, 439 U.S. 128, 143 (1978).

---

[4] Although he concluded that the defendant had no standing to challenge the search of 412 Essex Street, the motion judge nonetheless addressed the merits of the defendant's motion and concluded that the police had acted properly on probable cause and in response to exigent circumstances. Because we conclude that the defendant has no standing, we do not address these other contentions.

[5] At trial, there was evidence that the first-floor apartment at 412 Essex Street was the apartment of the defendant's father. The defendant denied having access to the apartment.

The defendant contends that, even if we conclude that his Fourth Amendment rights were not violated, we may still determine that the search of the apartment at 412 Essex Street violated his rights secured by art. 14. The defendant notes that art. 14 "may afford greater protections to a person in certain circumstances than those required by Federal decisions interpreting the Fourth Amendment." *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978). See *Commonwealth* v. *Upton,* 390 Mass. 562, 580 n.1 (1983) (Lynch, J., dissenting), rev'd on other grounds, 466 U.S. 727 (1984) (per curiam), *S.C.,* 394 Mass. 363 (1985); *Commonwealth* v. *Sheppard,* 387 Mass. 488, 508 n.22 (1982), rev'd on other grounds, 468 U.S. 981 (1984); *Commonwealth* v. *Podgurski,* 386 Mass. 385, 391 n.11 (1982), cert. denied, 459 U.S. 1222 (1983).

The defendant urges this court to adopt the rule of *Jones* v. *United States,* 362 U.S. 257 (1960), which affords individuals accused of possessory crimes "automatic standing" to challenge the legality of a search. The defendant correctly asserts that this court has left open the possibility that it will retain the automatic standing rule of *Jones* which the United States Supreme Court overruled in *United States* v. *Salvucci,* 448 U.S. 83 (1980). See *Commonwealth* v. *Varney,* 391 Mass. 34, 38 n.3 (1984); *Commonwealth* v. *King,* 389 Mass. 233, 240 n.13 (1983); *Commonwealth* v. *Hason,* 387 Mass. 169, 172 (1982); *Podgurski, supra* at 391.

We need not decide whether to adopt the automatic standing rule of *Jones* because, assuming we were to adopt automatic standing, the defendant would not be aided thereby. Automatic standing under the *Jones* rule is conferred on an individual accused of a possessory crime even if that person would not be an owner or tenant, if that individual is either in possession of the contraband at the time of the search, or is legitimately on the premises searched at the time of the search. *Jones, supra* at 263-264, 265. On the facts of this case, the defendant does not fall within the standing requirements of *Jones.*

The defendant was not in possession of the sawed-off shotgun at the time the police searched the premises at 412 Essex Street. Rather, proof of the defendant's possession of the shotgun de-

pended solely on the testimony of Hector Lopez. Indeed, the defendant's conviction was premised on his possession of the shotgun at the time he showed it to Lopez, and not on possession at the time of the search. Furthermore, the defendant was not present in the apartment at the time of the search. Thus, there is no basis for asserting automatic standing to contest the search.[6]

The defendant asserts that interest in the seized item is sufficient for automatic standing if the charge against the defendant is for possessing the seized item. We do not agree. Automatic standing flows from the expectation of privacy in the place searched at the time the item is seized, from the defendant's presence at the time the item is seized, or from the defendant's interest in the place searched. Automatic standing does not derive from the item seized. Rather, it protects the defendant's expectation of privacy in the place searched. See *Jones, supra.* There is no error in the denial of the defendant's motion to suppress.

2. *Prior relationship with the intended victim.* The defendant argues that he is entitled to a new trial because the trial judge erred in admitting evidence that the defendant and Carmen Lopez had a quarrelsome relationship. More specifically, the defendant argues that reversal is required because testimony concerning a restraining order obtained by Carmen Lopez was

---

[6]This case is distinguishable from *Commonwealth* v. *Franklin,* 376 Mass. 885 (1978), on which the defendant relies. In *Franklin,* this court concluded that a defendant was entitled to assert automatic standing to bring a motion to suppress evidence seized during a warrantless search because the prosecution had presented ample evidence at trial to prove the defendant's presence and proprietary interest in the apartment that was searched. Citing *Jones,* we stated, "that to allow the prosecution the benefit of its witnesses' testimony for purposes of establishing probable cause and then to ignore that testimony when it might aid the defendant in establishing standing would be inconsistent with this court's general effort to insure fairness at every stage of a defendant's trial." *Id.* at 900. However, in *Franklin,* the defendant was present in the apartment when it was searched, *id.* at 890, a circumstance distinguishable from those before us here.

admitted in evidence.[7] The judge limited the testimony to the issue of the defendant's "access to his father's home"[8] and whether the defendant thus "had custody or control of the shotgun." The jurors repeatedly were instructed that the defendant was not charged with any offense against Carmen Lopez. The nature of the relationship between the intended victim and the defendant was relevant on the issue whether the defendant lived at his father's apartment and "as supplying a possible motive for the defendant's [threat to take] violent action against [Carmen Lopez] . . . . It was well for the jury to have a view of the entire relationship between the defendant and . . . [the alleged victim]." *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981), *S.C.*, 399 Mass. 527 (1987).

The defendant also contends that the evidence of motive, and particularly the evidence of the existence of a restraining order, was too remote from the events involved in the case to have probative value outweighing the potential for prejudice. The question whether the evidence was too remote was within the judge's discretion. The evidence of prior quarrels bore on the defendant's hostility to Carmen Lopez and the reason he kept the shotgun in his father's apartment. The judge gave careful limiting instructions as to the purposes of this evidence. There was no error.

*Judgments affirmed.*

---

[7] Carmen Lopez stated she had obtained a restraining order. The defendant denied any knowledge of the restraining order. The order was not otherwise mentioned.

[8] The defendant and his father denied that the defendant ever lived in the apartment at 412 Essex Street. Carmen Lopez stated that the defendant was living there at the time she met him and Hector Lopez stated that the defendant told him on the night of the crime that the apartment was his as well as his father's.