## Commonwealth *vs.* Aswad Smith.

Barnstable. May 5, 2005. - June 28, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Deoxyribonucleic Acid. Statute,* Construction. *Words,* "Punishable by imprisonment in the State prison," "Offense."

This court concluded that G. L. c. 22E, § 3, which mandates submission of a deoxyribonucleic acid (DNA) sample to the State DNA database by any person convicted of an offense that is punishable by imprisonment in the State prison, extends to persons convicted of any felony, without regard to whether that conviction stems from an indictment in the Superior Court or a complaint in the District Court. [499-501]

Complaint received and sworn to in the Falmouth Division of the District Court Department on April 16, 2002.

A motion to modify terms of probation, filed on July 19, 2004, was heard by *Michael C. Creedon,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

Sosman, J. The present appeal concerns the interpretation of the 2003 amendment to G. L. c. 22E, § 3, mandating submission of a deoxyribonucleic acid (DNA) sample to the State DNA database by any person "convicted of an offense that is punishable by imprisonment in the [S]tate prison." St. 2003, c. 107, § 1. The defendant contends that because the felony charge to which he pleaded guilty was brought against him by way of complaint in the District Court and he could not have been sentenced to State prison, he therefore does not meet the statutory criterion of being convicted of an offense "punishable by imprisonment in the [S]tate prison." *Id.* We reject the

defendant's proposed interpretation, and hold that the statute extends to persons convicted of any felony, without regard to whether that conviction stems from an indictment in the Superior Court or a complaint in the District Court.

1. *Background.* On April 16, 2002, a complaint was issued by the Falmouth District Court charging the defendant with armed burglary (G. L. c. 266, § 14), home invasion (G. L. c. 265, § 18C), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A [*b*]), assault with intent to murder (G. L. c. 265, § 15), and malicious destruction of property (G. L. c. 266, § 127). On August 1, 2002, the defendant pleaded guilty to the charge of assault and battery by means of a dangerous weapon and was sentenced to a term of two years in a house of correction, one year to serve, the balance suspended with probation until July 22, 2004. The defendant also pleaded guilty to the charge of malicious destruction of property, and that charge was filed. The remaining charges were dismissed.

At the time of the defendant's plea, the crime of assault and battery by means of a dangerous weapon was not on the list of specific crimes that would, on conviction, trigger the requirement that the defendant submit a sample to the State DNA database. See St. 1997, c. 106, § 7. However, on November 12, 2003, the Governor approved St. 2003, c. 107, § 1, amending G. L. c. 22E, § 3, to require submission of a DNA sample by "[a]ny person who is convicted of an offense that is punishable by imprisonment in the [S]tate prison and any person adjudicated a youthful offender by reason of an offense that would be punishable by imprisonment in the [S]tate prison if committed by an adult . . . ." The amendment became effective on February 10, 2004, during the term of the defendant's probation, and required persons on probation or parole as a result of any conviction within the amended section to submit a sample within one year of the effective date of the amendment or prior to the termination of probation or parole, whichever occurred first. St. 2003, c. 107, § 2.

On July 1, 2004, the defendant's probation officer notified him that he was required to submit a DNA sample in accordance with the recent change in the statute, and that failure to do so would constitute a violation of his probation. In response, the defendant filed a motion to modify the terms of his probation,

seeking an order to the effect that the amended version of G. L. c. 22E, § 3, did not apply to him and he was therefore not required to submit any DNA sample to the database. On July 22, 2004, a judge in the District Court denied the defendant's motion, but stayed that denial and continued the defendant's probation pending the outcome of the present appeal.

2. *Discussion.* In its current form, the statute provides that a DNA sample must be submitted by "[a]ny person who is convicted of an offense that is punishable by imprisonment in the [S]tate prison . . . ." G. L. c. 22E, § 3. The proceedings against the defendant were brought in the District Court, which lacks authority to impose a sentence to State prison. G. L. c. 218, § 27. Moreover, the defendant was not indicted, and a person may not be sentenced to State prison unless "afforded the right to indictment or presentment by a grand jury." *Brown* v. *Commissioner of Correction*, 394 Mass. 89, 91-92 (1985), citing *Jones* v. *Robbins*, 8 Gray 329 (1857) (interpreting art. 12 of the Massachusetts Declaration of Rights). Because his conviction for assault and battery by means of a dangerous weapon could not have resulted in incarceration in State prison, the defendant contends that he was not "punishable by imprisonment in the [S]tate prison." G. L. c. 22E, § 3.

The issue under § 3, however, is whether the "offense" is so punishable, not whether the individual defendant was sentenced to State prison, or whether the individual defendant could have been sentenced to State prison by the sentencing judge. The phrase "punishable by imprisonment in the [S]tate prison" modifies the word "offense," not the word "person." If the Legislature had intended that the phrase modify the word "person" (and thus to apply the statute only if the procedural circumstances of the case made imprisonment in the State prison an option as to that specific defendant), the wording would have been "[a]ny person convicted of an offense *who* is punishable by imprisonment in the [S]tate prison." The Legislature did not do so, but instead worded the statute in a way that makes the potential punishment for the underlying "offense" the determinative factor for inclusion in the DNA database. Here, the crime of which the defendant stands convicted, assault and battery by means of a dangerous weapon, is punishable by up to

ten years in the State prison. G. L. c. 265, § 15A (*b*). The "offense" is thus potentially "punishable by imprisonment in the [S]tate prison," and the plain wording of G. L. c. 22E, § 3, applies.[1]

This interpretation is reinforced by the history of the statute and the purpose of the 2003 amendment. The DNA database is intended to "preserv[e] a permanent identification record of convicted persons for resolving past and future crimes." *Landry v. Attorney Gen.*, 429 Mass. 336, 347 (1999). As originally enacted, the statute required the submission of DNA samples from persons convicted of any one of a list of specific crimes. See St. 1997, c. 106, § 7. That list included some crimes that were within the exclusive jurisdiction of the Superior Court (e.g., the crime of murder, G. L. c. 265, § 1), and some crimes over which the District Court had jurisdiction concurrent with that of the Superior Court (e.g., indecent assault and battery on a child, G. L. c. 265, § 13B). St. 1997, c. 106, § 7. See G. L. c. 218, § 26. Thus, the statute as originally enacted was not limited to convictions obtained by way of indictment in the Superior Court. Rather, the statute sought to define a group of offenders as to whom law enforcement might reasonably need DNA information for ongoing and future investigations; that purpose has nothing to do with where a defendant's case was tried.

The thrust of the 2003 amendment, entitled "An Act to

---

[1] The term "felony" is defined using terminology virtually identical to that used in G. L. c. 22E, § 3. "A crime punishable by death or imprisonment in the [S]tate prison is a felony. All other crimes are misdemeanors." G. L. c. 274, § 1. Other statutes distinguish "felony" convictions from "misdemeanor" convictions for a variety of purposes. See, e.g., G. L. c. 233, § 21 (use of prior conviction for purpose of impeachment); G. L. c. 140, § 131 (*d*) (i) (eligibility for license to carry firearms). Were we to adopt the defendant's proposed interpretation of what makes a "crime" (or "offense") "punishable by . . . imprisonment in the [S]tate prison," we would have to treat all convictions in the District Court as "misdemeanors" under G. L. c. 274, § 1, and hence as "misdemeanors" for all purposes under other statutory provisions predicated on the distinction between "felony" and "misdemeanor" convictions. In G. L. c. 274, § 1, as here, the issue is how the "crime" itself may potentially be punished, not how a particular defendant before a particular court may be punished. See 8 Op. Att'y Gen. 342, 343 (1927) (fact that defendant was prosecuted in District Court rather than Superior Court "does not affect the nature of the defendant's crime and make an offense which is defined by statute as a felony a misdemeanor").

enhance the [S]tate DNA database," 2003 Senate Doc. No. 187, was to expand the scope of the DNA database to include DNA samples from all convicted felons, not just those convicted of the specifically listed crimes. Indeed, when the amendment was being considered in the Senate, some senators proposed that instead of covering all felonies of whatever nature, the specific list of crimes should simply be expanded. See 2003 Senate J. 535.[2] The debate was thus between expanding the scope of the DNA database to include all felonies, or identifying additional specific crimes for which preservation of a DNA sample would be appropriate. Nothing in that debate over how the database should be enlarged suggested that the database would, at the same time, be narrowed from its original scope to include only those persons convicted in the Superior Court after indictment. If we were to adopt the defendant's proposed interpretation, many persons convicted of the crimes listed in the original statute (which included persons convicted in the District Court) would no longer be included in the DNA database, depending on the prosecutor's decision to proceed by way of complaint in the District Court.[3] We discern no legislative intent to drop from the statute's scope any category of persons covered under the original statute, but rather an evident legislative intent to "enhance" the DNA database by including samples from a broader range of offenders.

We therefore affirm the order denying the defendant's motion to modify the terms of his probation.

*So ordered.*

---

[2]In both proposed versions of that expanded list, the crime of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), the offense of which this defendant stands convicted, was included among the specifically enumerated offenses. 2003 Senate J. 535-536.

[3]We note that if inclusion in the DNA database could only be effected by pursuing the felony charge in the Superior Court, it would introduce a major disincentive to pursuing any felony charges in the District Court. We see no reason why the Legislature would want this factor to influence prosecutorial decisions as to which department of the Trial Court would be more appropriate.